# CIRCUIT COURT OF THE CITY OF NORFOLK

Unisun Insurance Co.

v.

Schulwolf et al.

August 23, 2000

Case No. (Law) L97-3179

BY JUDGE CHARLES E. POSTON

This action is before the Court on the parties' cross-motions for summary judgment. Unisun is seeking declaratory judgment that an insurance policy it issued on a residential building in which the defendants lived denies coverage for lead-based paint-related injury and damage claims. Defendants Edwards and Bishop seek summary judgment on the issue of coverage, arguing that because the pertinent language of the insurance policy is open to more than one reasonable interpretation, the Court must find in favor of coverage. The Court denies the plaintiff's motion for summary judgment and grants the defendants' motion for summary judgment.

In March 1993, Unisun issued an insurance policy to Sol and Molly Steinbach providing coverage for a residence at 114 W. 34th Street in the City of Norfolk. The Edwards and Bishop defendants rented the property from the Steinbachs during the time the Unisun policy was in effect. The defendants have brought suit against the estate of Sol Steinbach alleging that lead-based paint on the premises was deteriorating, causing residue from the lead-based paint to be accessible and chewable by the infant defendants. They further allege that the infant defendants were exposed to a high level of lead from deteriorating lead-based paint, resulting in those infants' sustaining lead poisoning.

Unisun has filed this declaratory judgment action, asking the court to find that its insurance policy does not cover residential lead-based paint-related injury and damage. Unisun's policy contains a provision, commonly known

in the insurance industry as an "absolute pollution exclusion." The policy provision reads in its entirety:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants:

(a) At or from premises you own, rent, or occupy;

(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing, or treatment of waste;

(c) That are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(i) If the pollutants are brought on or to the site or location in connections with such operations; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, contain, treat, detoxify, or neutralize the pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, alkalis, chemicals, and waste. Waste includes material to be recycled, reconditioned, or reclaimed.

Subparagraphs (a) and (d)(i) of paragraph (1) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke, or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

This, according to Unisun, excludes from coverage any injury resulting from the presence of lead-based paint on residential premises. The defendants claim that the policy language is ambiguous when applied in the present context.

The question *sub judice* is whether the pollution exclusion is ambiguous in the context of lead poisoning claims in a household setting. The court, then, must decide, if there are conflicting reasonable interpretations of whether lead-based paint is a pollutant and whether deteriorating lead-based paint is

"discharged, dispersed, released, or escaped" when applied to the facts of this case.

Under Virginia law, "courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." Each phrase and clause of an insurance contract "should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as they expressed therein." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993) (quoting *Suggs v. Life Ins. Co. of Va.*, 207 Va. 7, 11, 147 S.E.2d 707, 710 (1966)). The Supreme Court of Virginia reiterated the applicable principles of law regarding insurance policy exclusions in *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992):

> Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. *Johnson v. Insurance Co. of North America*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous. *State Farm Mutual Ins. Co. v. Gandy*, 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989). An ambiguity, if one exists, must be found on the face of the policy. *Nationwide Mutual Ins. Co. v. Wenger*, 222 Va. 263, 268, 278 S.E.2d 874, 877 (1981). And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. *Lincoln National Life Ins. Co. v. Commonwealth Container Corp.*, 229 Va. 132, 136-37, 327 S.E.2d 98, 101 (1985). Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it. *St. Paul Ins. v. Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

*Id.* (citing *American Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989)).

Unisun cites two Pennsylvania federal cases and one New York State case for support of its contention that lead-based paint injury claims are excluded from coverage. In *St. Leger v. American Fire and Cas. Ins. Co.*, 870 F. Supp. 641 (E.D. Pa. 1994), the court held that the lead-based paint claim of the tenant against the owner was excluded by absolute pollution exclusion; lead

is clearly a pollutant as defined in the absolute pollution exclusion. The court in *Kaytes v. Imperial Cas. and Indem. Co.*, 1994 U.S. Dist. LEXIS 21256, 1994 WL 780901 (E.D. Pa. 1994), stated that, "Lead is a chemical that irritates and contaminates, the exclusion is clear and facially unambiguous" and "lead falls squarely within" the absolute pollution exclusion. In *Oates v. State of New York*, 157 Misc. 2d 618, 597 N.Y.S.2d 550 (Ct. Cl. N.Y. 1993), appeal withdrawn after settlement, 206 A.D.2d 979, 615 N.Y.S.2d 993 (1st Dept. 1994), the court discussed the history of the pollution exclusion. The court held that the exclusion excluded coverage to a landlord sued by tenants as a result of lead ingestion, even though the landlord did not apply the lead-based paint and the word "lead" was not set out in the exclusion.

Alternatively, the defendants cite *Sphere Drake Ins. Co. v. Y. L. Realty Co.*, 990 F. Supp. 240 (S.D. N.Y. 1997), and *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617 (Md. 1995), r'hg denied (1995), to support their contention that the pollution exclusion clause is ambiguous and does not include lead-based paint injury claims. In *Sphere Drake*, the insurance company argued that the pollution exclusion was redrafted to cover contaminants such as lead paint. The federal court in *Sphere*, however, held that a "thorough reading of that history leads to a very different conclusion," noting that "there is no indication that the change in the language was meant to expand the scope of the clause to nonenvironmental damage." *Id.* The court "agreed with other courts that have addressed the amended language . . . in finding that the change of language did not exclude liability for lead-paint-related injury. At best, the language remains ambiguous, and this ambiguity is fatal to the insurer's position." *Id.*

The Maryland Supreme Court in *Sullins* held that the insured had a duty to defend its insured landlord in a suit by the tenant injured by lead poisoning. See *Sullins*, 340 Md. 503, 667 A.2d 617 at 622. The court cited *Pipefitters Welfare Educ. Fund v. Westchester Fire*, 976 F.2d 1037 (7th Cir. 1992), for the proposition that a blind application of the literal terms of the pollution exclusion would negate virtually all coverage and potentially lead to absurd results:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. Take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the

spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants and contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Id.*

This view formed the basis for the Court of Appeals of Kentucky's holding in *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679 (1996); the court determined that the clause was ambiguous as applied to a carbon monoxide leak in a vent pipe. Although the clause in *Motorists Mutual* was contained in a commercial general liability policy, it was identical to the clause at issue. The Kentucky court concluded that "persons with ordinary and usual understanding would construe" the terms "discharge," "dispersal," "seepage," "migration," "release," or "escape" of "pollutants" as "environmental terms of art." *Id.* at 681. The court noted that these terms reflect the pollution exclusion's historical objective of avoidance of liability for intentional environmental pollution. See *id.* Kentucky's interpretation is especially persuasive, because Kentucky's common law is so similar to Virginia's. See Ky. Const. § 233.

Concluding that the pollution exclusion applies to only environmental injury would not limit its application to industrial pollution. The New York federal court in *Lefrak Org. v. Chubb Custom Ins.*, 942 F. Supp. 949 (S.D. N.Y. 1996), analyzed the defendant's argument that the pollution clause could not be limited to outside, environmental injury because it would render the "at or from premises" clause meaningless. The defendant in *Lefrak* asserted, as does Unisun here, that the "at or from premises" clause expanded and replaced the prior policy references to "land, atmosphere, or any water course or body of water." The court cited the dictionary definition of "premises" as including the land and buildings on it, as well as a building or section of a building. The court concluded that under the definition, "pollution could well occur at the premises and still be 'environmental'," since outdoor space such as grassy areas, parking lots, and areas for garbage disposal would be included as part of the "premises." *Id.*

The court finds more convincing the defendants' argument that the pollution exclusion is ambiguous as to whether it excludes coverage in the present context. Under the facts of this case, it is reasonable to conclude that the exclusion clause applies only to claims based on environmental pollution. Unisun's position with respect to the exclusion clause is likewise reasonable. The clause must, therefore, be deemed ambiguous. Although, as drafter of the

policy, the plaintiff had the opportunity to define this language more fully, it chose not to do so. Consequently, the clause is construed most strongly against the party who used it in drafting the document. The court denies the plaintiff's motion for summary judgment and grants the defendants' motion for summary judgment on the issue of coverage.