A07A0338. AUTO-OWNERS INSURANCE COMPANY v. REED et al.
(649 SE2d 843)

ANDREWS, Presiding Judge.

Auto-Owners Insurance Company filed this declaratory judgment action contending that Lessie Reed's claim of carbon monoxide poisoning against her landlord, C. Melvin Waldrop, is excluded from coverage under Waldrop's commercial general liability ("CGL") policy. The trial court denied Auto-Owners' motion for summary judgment

and we granted Auto-Owners' application for interlocutory appeal. For the reasons that follow, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that Auto-Owners issued a CGL policy to Waldrop with an applicable policy period of January 12, 2002 through January 12, 2003. Reed filed a complaint alleging that on December 27, 2002, she suffered carbon monoxide poisoning inside the home she rented from Waldrop as a result of his failure to keep the premises in repair and free from defects. After Waldrop provided notice of the claim to Auto-Owners, the insurer began defending Waldrop under a reservation of rights.

Waldrop's policy provided in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .
>
> 2. Exclusions.
>
> This insurance does not apply to: . . .
>
> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Auto-Owners contends that the damages Reed seeks are excluded under the unambiguous terms of Waldrop's policy because Reed's claim satisfies all of the following conditions: (1) she alleges that her damages arose from the discharge, dispersal, or release of carbon monoxide; (2) she alleges that the discharge, dispersal, or

release of carbon monoxide occurred at property Waldrop owned; and (3) carbon monoxide is a pollutant as defined in the policy.

Reed and Waldrop conceded that the first two conditions were satisfied. They argued below and now on appeal that the breadth of the definition of "pollutants" renders the pollution exclusion ambiguous.

The trial court, without explanation, denied Auto-Owners' motion for summary judgment. This appeal followed.

> The words used in policies of insurance, as in all other contracts, bear their usual and common significance, and policies of insurance are, as in all other contracts, to be construed in their ordinary meaning. An unambiguous policy, as here, requires no construction, and its plain terms must be given full effect even though they are beneficial to an insurer and detrimental to the insured. The natural, obvious meaning of a policy provision is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover.

(Citations and punctuation omitted.) *Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 231 Ga. App. 89, 90 (498 SE2d 572) (1998).

The policy in this case excludes coverage for damages resulting from the "discharge, dispersal, seepage, migration, release or escape of pollutants" defined as "any solid, liquid, gaseous or thermal irritant or contaminant," including "fumes." Reed's claim is that she has been injured by the discharge of carbon monoxide at the insured property. There is no dispute that carbon monoxide is a fume and a gaseous irritant or contaminant. Therefore, it falls clearly within the policy exclusion.

Although, as the dissent discusses, there are some states that have found to the contrary, this issue has already been decided in Georgia and therefore other state's case law is not persuasive. In *American States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499 (455 SE2d 133) (1995), the home became contaminated after asbestos fibers in the kitchen flooring were released into the air. The construction company that sanded the floors, thereby causing the asbestos to be released into the home, was insured by a policy with a "pollution exclusion" provision identical to the one in this case. The court held that "[t]here is little question that asbestos constitutes a pollutant as unambiguously defined in the exclusion." Id. at 501.

The asbestos in the *American States* case was not an environmental pollutant; it was completely contained inside the house and is indistinguishable from the carbon monoxide in this case. Accordingly,

we are bound by that holding. See also *Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp.*, 190 Ga. App. 231, 232 (378 SE2d 407) (1989) (no ambiguity as to scope of pollution exclusion); *Truitt Oil & Gas*, supra at 90-91 (pollution exclusion in insurance policy is not ambiguous).[1]

Because there is Georgia law on point, we need not look to other state's case law; however, as the dissent points out, there are numerous jurisdictions which agree with the holding in *American States*. See, e.g., *Matcon Diamond, Inc. v. Penn. Nat. Ins. Co.*, 815 A2d 1109 (Pa. Super. Ct. 2003) (carbon monoxide fumes released inside store were pollutant for purposes of pollution exclusion in insurance policy); *Deni Assoc. of Florida v. State Farm Fire &c. Ins. Co.*, 711 S2d 1135 (Fla. 1998) (pollution exclusion is unambiguous and does not apply only to environmental pollutants); *Bernhardt v. Hartford Fire Ins. Co.*, 648 A2d 1047 (Md. App. 1994) (pollution exclusion applies to claim for injury due to carbon monoxide in building); *League of Minn. Cities Ins. Trust v. City of Coon Rapids*, 446 NW2d 419 (Minn. App. 1989) (coverage was properly denied under pollution exclusion provision after nitrogen dioxide was released into ice arena from Zamboni); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F3d 997, 1006 (4th Cir. 1998) (pollution exclusion barred coverage for injury to hotel guests after release of carbon monoxide); *Reliance Ins. Co. v. Moessner*, 121 F3d 895, 901 (3d Cir. 1997) (carbon monoxide poisoning fell under the pollution exclusion); *Longaberger Co. v. U. S. Fidelity & Guaranty Co.*, 31 FSupp.2d 595, 603 (S.D. Ohio 1998) (carbon monoxide released into home from furnace was a pollutant and came under pollution exclusion in policy); *West American Ins. Co. v. Band & Desenberg*, 925 FSupp. 758 (M.D. Fla. 1996) (rejecting argument that pollution exclusion is ambiguous and holding that the pollution exclusion applied to dispersal of contaminant from building's attic into building's airspace); *Essex Ins. Co. v. Tri-Town Corp.*, 863 FSupp. 38 (D. Mass. 1994) (discharge of carbon monoxide from malfunctioning Zamboni falls within pollution exclusion).

Accordingly, for the reasons discussed above, we conclude that *American States* controls in this case. The trial court erred in denying Auto-Owners' motion for summary judgment.

*Judgment reversed. Blackburn, P. J., Phipps, Mikell and Adams, JJ., concur. Johnson, P. J., and Ellington, J., dissent.*

---

[1] Reed relies on *Kerr-McGee Corp. v. Ga. Cas. & Surety Co.*, 256 Ga. App. 458 (568 SE2d 484) (2002), as authority for her argument that the pollution exclusion does not apply in this instance. *Kerr-McGee* is inapposite; but, to the extent that it is contrary to the above-cited cases, that opinion cannot stand as authority because it is a one-judge opinion with two judges joining in the judgment only and therefore has no precedential value.

ELLINGTON, Judge, dissenting.

I would affirm the trial court's order denying Auto-Owners' motion for summary judgment, and, therefore, I respectfully dissent.

The majority ignores the basic precept that a contract is ambiguous if it is susceptible of more than one reasonable construction.[2] It cannot be seriously doubted that the absolute pollution exclusion upon which Auto-Owners based its denial of coverage[3] *can* reasonably be interpreted in at least two ways, that is, either (1) as including any potentially irritating substance, or (2) as being limited to what is commonly or traditionally considered environmental pollution. Indeed, this exclusion *has* been interpreted in these two ways by federal and state appellate courts across the country. Compare cases cited in the majority with the cases collected in note 7 and section (b), infra.

Contrary to the majority's opinion, this issue had not already been decided in Georgia. In fact, this is the first time we have been presented with the exact question of whether the pollution exclusion at issue is ambiguous because it defines "pollutants" in terms that can reasonably be interpreted in more than one way — either as including virtually any substance or chemical in existence or as including only environmental pollution. As a result, the cases cited by the majority, in which this Court stated generally that the absolute pollution exclusion is not ambiguous,[4] do not control our decision in this case.

The "any irritant" definition of pollutants should be read in the context of the full text of the exclusion and in the context of the purpose of the provision and the historical evolution of the text of the standard exclusion. The only defensible conclusion is that the exclusion at issue was intended to apply only to injury or damage caused by what is commonly considered environmental pollution.[5] Because, as the majority demonstrates, the exclusion can also be read without so limiting the definition of pollutants, the exclusion is patently ambiguous.

---

[2] See *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996) (Under the rules of contract construction, "if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied.") (citation omitted).

[3] See section (a), infra, for the full text of the exclusion.

[4] *Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 231 Ga. App. 89, 91 (1) (b) (498 SE2d 572) (1998); *American States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499, 501 (455 SE2d 133) (1995); *Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp.*, 190 Ga. App. 231, 232 (378 SE2d 407) (1989). See section (c), infra, for a detailed discussion of these cases.

[5] See *Kerr-McGee Corp. v. Ga. Cas. & Surety Co.*, 256 Ga. App. 458, 463 (568 SE2d 484) (2002) (physical precedent only) (absolute pollution exclusion is ambiguous; the purpose of such exclusions is "to bar coverage responsibility for government-mandated cleanup under the Superfund for gradual environmental damages of any type"; construed against the insurer, CGL policy provided coverage for a release of titanium tetrachloride within a chemical plant but not into the outside environment) (citations omitted). See also section (d), infra.

Because the exclusion at issue is ambiguous, we are duty bound to apply the relevant rules of construction.[6] When the exclusion is construed in favor of the insured, resulting in a definition of "pollutants" that is limited to what is commonly or traditionally considered environmental pollution, I believe that Auto-Owners failed to carry its burden as an insurer denying coverage of showing that Reed's alleged damages fell within the exclusion. That is, because nothing in the record suggests that the carbon monoxide Reed inhaled had escaped her residence or otherwise met the definition of an environmental pollutant, Auto-Owners failed to establish that Reed's alleged damages arose from the discharge, dispersal or release of an environmental pollutant.

In addition, under Georgia law, insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.[7] I would find, as a majority of other jurisdictions have done, that a reasonable business person would understand that an accidental carbon monoxide leak that originates and remains confined within the insured property would be covered under the standard CGL policy.[8] Otherwise, insurers are left free to sell Georgia's

---

[6] See OCGA § 13-2-2; *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (1) (299 SE2d 561) (1983) (these apply in the construction of insurance contracts: "[a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible") (citations omitted); *Alewine v. Horace Mann Ins. Co.*, 197 Ga. App. 479, 480 (398 SE2d 756) (1990) ("If the language is ambiguous, an insurance policy will be construed against the party preparing it and in favor of coverage.") (citation omitted); *Prudential Ins. Co. of America v. South*, 179 Ga. 653, 655 (177 SE 499) (1934) (an insurance policy should be construed liberally to effectuate the general purpose of the contract, which is to provide the insured with coverage).

[7] *Richards v. Hanover Ins. Co.*, 250 Ga. at 615 (1). See also *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291, 295 (265 SE2d 102) (1980) ("In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.") (citation omitted).

[8] See, e.g., *Regional Bank of Colorado v. St. Paul Fire and Marine Ins. Co.*, 35 F3d 494, 498 (10th Cir. 1994) (applying Colorado law) ("[a] reasonable policy holder would not understand the policy to exclude coverage for *anything* that irritates. . . . While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as 'pollution.' It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable.") (emphasis in original); *Richardson v. Nationwide Mut. Ins. Co.*, 826 A2d 310, 314 (D.C. 2003) (applying District of Columbia law) ("A reasonable person reading the entire clause at the time it was written by the insurance industry and approved by state regulators could fairly conclude that its language was fully consistent with [the purpose of protecting insurers from enormous liability for environmental cleanups of hazardous waste sites and industrial facilities], and that the exclusion therefore had no application to a malfunctioning furnace [which caused carbon monoxide poisoning] in an apartment house."), opinion vacated on other grounds, 832 A2d 752 (D.C. 2003)

business owners the mere illusion of coverage and to later trump claims for a host of ordinary risks associated with an insured business with the "any irritant" pollutant card. We can and should limit the absolute pollution exclusion to its intended and legitimate purpose of allowing insurers to issue CGL policies without facing "the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances *into the environment*."[9]

a. *Full text of the exclusion.* The pollution exclusion in Waldrop's policy provided as follows:

> This insurance does not apply to: . . .

> f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

> (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

---

and 844 A2d 344 (D.C. 2004); *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F3d 34, 37-38 (2d Cir. 1995) (applying New York law) (carbon monoxide emitted into the plaintiffs' apartments due to a faulty heating and ventilation system as environmental pollution); *American States Ins. Co. v. Koloms*, 687 NE2d 72, 81 (Ill. 1997) (carbon monoxide released inside a commercial building due to a broken furnace); *Andersen v. Highland House Co.*, 757 NE2d 329, 333 (Ohio 2001) (carbon monoxide fumes from a malfunctioning heating unit inside a multi-unit apartment complex); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 SW2d 679, 682 (Ky. App. 1996) (carbon monoxide passed from where a vent pipe from a boiler used in a dry cleaning business through the common attic space and into an adjacent business); *Kenyon v. Security Ins. Co. of Hartford*, 626 NYS2d 347, 351 (N.Y. 1993) (carbon monoxide released into a condominium residence by an improperly installed water heater); *Western Alliance Ins. Co. v. Gill*, 686 NE2d 997, 1000-1001 (Mass. 1997) (carbon monoxide fumes emitted from the insured restaurant's tandoori ovens).

[9] (Citations and punctuation omitted; emphasis in original.) *American States Ins. Co. v. Koloms*, 687 NE2d at 81. See also section (d), infra.

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

> (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

> (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

> (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

b. *The exclusion is susceptible of more than one reasonable construction.* By reading the key terms of the absolute pollution exclusion in isolation, as the majority does, the exclusion can be

interpreted to apply to injury or damage caused by any substance or chemical in existence. This is because the terms "irritant" and "contaminant"

> admit of no natural or ordinary interpretation, . . . because it is unclear whether they refer to substances which ordinarily irritate or contaminate, substances which have in fact irritated or contaminated under these particular circumstances, regardless of their tendency to irritate or contaminate under most circumstances, or both. . . . *[A]ny substance could conceivably be an "irritant or contaminant" under the right circumstances.*

(Citations and punctuation omitted; emphasis supplied.) *Regent Ins. Co. v. Holmes*, 835 FSupp. 579, 582 (II) (D. Kan. 1993) (applying Kansas law).[10]

If, on the other hand, the word "pollutants" is given its usual connotation, and if the terms "irritant" and "contaminant" are read in the context of how they are used in the policy, that is, describing "pollutants," the absolute pollution exclusion can be interpreted to apply only to injury or damage caused by what is commonly considered environmental pollution. *Regional Bank of Colorado v. St. Paul Fire and Marine Ins. Co.*, 35 F3d 494, 498 (10th Cir. 1994). "Because the definitional phrase 'any irritant or contaminant' is too broad to meaningfully define 'pollutant,' [courts] must turn to the common connotative meaning of that term." *MacKinnon v. Truck Ins. Exchange*, 73 P3d 1205, 1216 (II) (D) (Cal. 2003). The usual connotation of the term "pollutant" is of "a substance that is harmful or toxic to persons or the environment generally." (Citation omitted.) *Regent Ins. Co. v. Holmes*, 835 FSupp. at 582 (where a child spilled a small bottle of formic acid inside her residence, the absolute pollution exclusion did not apply because the release of the irritating liquid "resulted in the severe but discrete injury of one person and inflicted no discernable injury on the environment"). Thus, application of the pollution exclusion depends on whether the particular release that is

---

[10] See also *Regional Bank of Colorado v. St. Paul Fire and Marine Ins. Co.*, 35 F3d at 498 (applying Colorado law) (the terms "irritant" and "contaminant" are "virtually boundless" and "[c]ould extend far beyond [the] intended scope [of the pollution exclusion]" and apply to any "substance or chemical in existence") (punctuation omitted); *Nautilus Ins. Co. v. Jabar*, 188 F3d 27, 30-31 (1st Cir. 1999) (applying Maine law) (accord); *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 FSupp. 1463, 1470 (D. Kan. 1991) (accord) (applying Kansas law), aff'd sub nom., *Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pittsburg*, 987 F2d 1516 (10th Cir. 1993); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 SW2d at 682 (accord); *MacKinnon v. Truck Ins. Exchange*, 73 P3d 1205, 1211 (Cal. 2003) (accord); *Unisun Ins. Co. v. Schulwolf*, 53 Va. Cir. 220 (2000) (accord).

the subject of a plaintiff's claim "was . . . harmful or toxic to persons or the environment generally." Id.[11] Furthermore, inherent in the use of the word "pollutant" is the sense that the substance has moved into the surrounding environment where it has thereby contaminated or similarly damaged natural resources (soil, bodies of water, or the atmosphere).[12] Gasoline in an underground storage tank is a commodity; gasoline that has leaked into the surrounding soil or into groundwater is a pollutant. *Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 231 Ga. App. 89, 91 (1) (b) (498 SE2d 572) (1998).[13] The exclusion at issue can, therefore, be reasonably interpreted as excluding coverage only where an irritant or contaminant that is harmful or toxic to persons or the environment generally has moved into the surrounding environment.[14]

c. *Cases relied upon by the majority.* The oldest case relied upon by the majority for the proposition that, under controlling Georgia law, coverage is excluded for injury or damage from any contaminant regardless of whether it is an environmental pollutant is *Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp.*, 190 Ga. App. 231 (378 SE2d 407) (1989). In that case, smoke from a "non-hostile" wood fire covered a nearby roadway and caused a multi-vehicle wreck. We held that the plaintiffs' claims did not fall within an exception to the absolute pollution exclusion provided in subpart (1) (d), for damages from "heat, smoke or fumes from a hostile fire." Id. at 232. We did not

---

[11] See also *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 FSupp. at 1469, n. 9 ("Pollution clauses appear to contemplate long-term environmental degradation or, at the very least, an environment-wide exposure to extremely hazardous or toxic substances.").

[12] See, e.g., The American Heritage Dictionary of the English Language (4th ed. 2006) ("pollutant" means "[s]omething that pollutes, especially a waste material that contaminates air, soil, or water"; "pollution" means "[t]he act or process of polluting or the state of being polluted, especially the contamination of soil, water, or the atmosphere by the discharge of harmful substances"); The American Heritage Science Dictionary (2002) ("pollution" means "[t]he contamination of air, water, or soil by substances that are harmful to living organisms").

[13] I note that some of the other jurisdictions that have ruled that carbon monoxide, even when confined within a residence or other building, is a pollutant within the terms of the exclusion have done so reluctantly and have expressed concern about the resulting breadth of the exclusion. See *Bernhardt v. Hartford Fire Ins. Co.*, 648 A2d 1047, 1052 (Md. App. 1994) (noting that the absolute pollution exclusion was "so broad in its application that it sweeps away coverage well beyond that which might be required to meet the [insurance] industry's legitimate aims"), cert. granted, 655 A2d 400 (Md. 1995) and cert. dismissed, 659 A2d 296 (Md. 1995); *Essex Ins. Co. v. Tri-Town Corp.*, 863 FSupp. 38, 40-41 (D. Mass. 1994) (expressing concern at the insurer's apparent "ability . . . to limit the scope of coverage while constantly increasing premiums").

[14] Thus, it is not determinative that carbon monoxide is defined as a pollutant in the context of federal and state regulation of motor vehicle emissions. 42 USC § 7408 (a) (1); 40 CFR Part 50; OCGA § 12-9-41 et seq.

address the issue of whether an irritant or contaminant that originated and remained confined within the insured premises and did not contaminate the surrounding environment is a pollutant within the terms of the exclusion.

The primary case relied upon by the majority is *American States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499, 501 (1) (455 SE2d 133) (1995). In that case, our opinion suggests that the contaminant, friable asbestos fibers, contaminated only the insured's home and did not pollute the surrounding environment. Id. Still, in summarily holding that asbestos is a pollutant within the terms of the policy, we relied on *Perkins Hardwood Lumber*, in which the pollutant had contaminated the surrounding environment. There is nothing in *American States Ins. Co.* to suggest that we specifically considered the "environmental pollution" versus "any irritant" ambiguity raised in this case. Id. Moreover, we concluded that the claim was excluded in that case because the asbestos met the definition of "waste" as used in subpart (1) (b) of the exclusion, and the removal of the asbestos fell under the exclusion for an insured's operations to remediate the effects of pollutants, as provided in subpart (1) (d) (ii) and (2) (a), none of which are at issue in this case.[15] Id. at 501 (1).

The most recent case cited by the majority is *Truitt Oil & Gas Co. v. Ranger Ins. Co.* In that case, the insured argued that the definition of "pollutants" was ambiguous because the policy referred in various provisions to gasoline in several different ways, e.g., "your product," "liquid products," and "gas." (Punctuation omitted.) *Truitt Oil*, 231 Ga. App. at 91 (1) (b). This argument did not present the issue we consider here. And, contrary to the majority's position in this case, we expressly held in *Truitt Oil* that "[g]asoline which has leaked from its storage container and *has contaminated the surrounding environment* constitutes a pollutant within the meaning of the policy." (Emphasis supplied.) Id. Clearly, gasoline which leaked from its storage container and into the ground and sewer system and contaminated the surrounding environment would commonly and traditionally be considered environmental pollution. Consequently, *even construing the exclusion in favor of coverage*, the insured's claim would properly be excluded because the injured party's damages arose from the seepage or discharge of an environmental pollutant. Thus, *Truitt Oil* does not support the majority's conclusion that an irritant or contaminant which has not escaped from the insured's premises and has not contaminated the surrounding environment is automatically a pollutant within the terms of the absolute pollution exclusion.

---

[15] See section (a), supra.

d. *Historical development of the text of the absolute pollution exclusion.* The absolute pollution exclusion

> was drafted during the early 1980s and was incorporated into the standard form CGL policies in 1986. The purpose of the new exclusion was to replace the 1973 "sudden and accidental" exclusion because insurers were distressed by judicial decisions holding that the 1973 exclusion did not preclude coverage for gradual but unintentional pollution. Further, the absolute exclusion was designed to bar coverage for gradual environmental degradation of any type and to preclude coverage responsibility for government-mandated cleanups.

(Citations and punctuation omitted.) *Andersen v. Highland House Co.*, 757 NE2d at 333, quoting Jeffrey W. Stempel, Reason and Pollution: Correctly Construing the "Absolute" Exclusion in Context and in Accord with Its Purpose and Party Expectations, 34 Tort & Ins. L. J. 1, 5 (1998). As one federal court recounted,

> [i]nsurance companies adopted standard pollution clauses in response to Congress' enactment of broad, sweeping legislation directed at cleaning up and protecting the limited resources of the United States. . . . The passage of these new laws imposed greater potential economic burdens on insurance underwriters of comprehensive general liability policies.

(Citations omitted.) *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 FSupp. 1463, 1469, n. 8 (D. Kan. 1991).[16] After discussing the "well-documented and relatively uncontroverted" events leading up to the insurance industry's adoption of the pollution exclusion, the Supreme Court of Illinois noted that the definition of "pollutants" at issue here

> was wrought, not to broaden the provision's scope beyond its original purpose of excluding coverage for environmental pollution, but rather to remove the "sudden and accidental" exception to coverage which . . . resulted in a costly onslaught of litigation. [Courts] would be remiss, therefore, if [they]

---

[16] See also *Richardson v. Nationwide Mut. Ins. Co.*, 826 A2d at 314 ("The largely undisputed history of the adoption of the absolute pollution exclusion reveals that its purpose was to protect insurers, in light of then recently enacted federal environmental legislation, from liability in the billions of dollars for environmental cleanups of hazardous waste sites and industrial facilities.").

were to simply look to the bare words of the exclusion, ignore its *raison d' être,* and apply it to situations which do not remotely resemble traditional environmental contamination. The pollution exclusion has been, and should continue to be, the appropriate means of avoiding the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances *into the environment.*

(Citations and punctuation omitted; emphasis in original.) *American States Ins. Co. v. Koloms,* 687 NE2d 72, 81 (Ill. 1997). "Given the historical background of the absolute pollution exclusion and the drafters' continued use of environmental terms of art," the court held that "the exclusion applies only to those injuries caused by traditional environmental pollution." Id. at 82. As a result, a "discharge, dispersal, release, or escape of a pollutant must be into the environment in order to trigger the pollution exclusion clause and deny coverage to the insured." (Citations and punctuation omitted.) Id. at 81-82. As the Court of Appeals for the Tenth Circuit held, the terms "irritant" and "contaminant" in the standard absolute pollution exclusion "cannot be read in isolation, but must be construed as substances generally recognized as polluting the environment. They must occur in a setting such that they would be recognized as a toxic or particularly harmful substance in industry or by governmental regulators." (Citation and punctuation omitted.) *Regional Bank of Colorado v. St. Paul Fire and Marine Ins. Co.,* 35 F3d at 498.

In summary, on this record Auto-Owners is not entitled to judgment as a matter of law based on the premise that all damages claimed by Reed arise from the discharge, dispersal or release of a pollutant within the terms of the policy's pollution exclusion. We should affirm the trial court's ruling.

I am authorized to state that Presiding Judge Johnson joins in this dissent.

DECIDED JULY 16, 2007 —

*Talley, French & Kendall, Michael C. Kendall*, for appellant.
*Johnston, Owen & Bullard, William G. Johnston III, Beck, Owen & Murray, Charles D. Jones*, for appellees.