A10A1125. BARRETT et al. v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH et al.

(696 SE2d 326)

BLACKBURN, Judge.

In this insurance coverage action, Brey and Katrina Barrett, as assignees of Atlanta Gas Light Company ("AGL"), appeal from the

trial court's orders dismissing their claims against AGL's excess liability insurer, National Union Fire Insurance Company of Pittsburgh ("National Union"), and Garner and Glover Company, the insurance broker who procured the National Union insurance policy ("Policy"). The Barretts argue that the trial court erred in holding: (i) that natural gas constitutes a "pollutant," as that term is defined in the Policy; and (ii) that Barrett's injuries "arose out of" the release or dispersal of natural gas, as opposed to the negligence of AGL's employees. We agree and therefore reverse the trial court's orders of dismissal.

> We review a trial court's order dismissing a plaintiff's complaint de novo, and will affirm the same only where (i) the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts asserted therein and (ii) the defendant establishes that the plaintiff could not possibly introduce evidence sufficient to warrant a grant of the relief sought. In making this analysis, we view all of the plaintiff's well-pleaded material allegations as true, and view all denials by the defendant as false, noting that we are under no obligation to adopt a party's legal conclusions based on these facts.

(Citations and punctuation omitted.) *Love v. Morehouse College.*[1]

So viewed, the record shows that in July 2001, Brey Barrett was an employee of Coosa Valley Contractors, Inc. ("CVC"), a company that installs natural gas pipelines. CVC had entered into a Pipeline Construction Agreement with AGL, under which CVC agreed to install, or to assist AGL with the installation of, main gas lines, service gas lines, and gas meters. On July 2, 2001, Barrett was assisting two AGL employees with the installation of three taps on a main gas line that had been installed by CVC.[2] These taps were apparently comprised of several pieces, including a valve and a completion plug. During the installation of the third and final tap on the line, an AGL employee lost the completion plug when it fell into the valve. To retrieve the completion plug, AGL employees used a device known as a "looking glass." This device bolted to the gas line, through which natural gas was flowing; the user then looked through the device and, using a rod with a hook attached, attempted

---

[1] *Love v. Morehouse College*, 287 Ga. App. 743, 743-744 (652 SE2d 624) (2007).

[2] According to the complaint, while CVC employees sometimes installed taps on service lines, only AGL employees were allowed to install taps on main gas lines, such as the one at issue.

to hook the completion plug and pull it from the valve. To be able to see the completion plug, however, it was necessary to eliminate glare by blocking light from shining on the looking glass and then using a flashlight to see the fallen object. The two AGL employees working with Barrett each tried unsuccessfully to retrieve the completion plug. The first employee made two separate attempts, with each attempt lasting approximately fifteen minutes. In between these two attempts, the second employee also tried, for approximately fifteen minutes, to extract the completion plug. Following these unsuccessful attempts, Barrett went into the excavation ditch where the gas line was located and, after approximately two hours, extracted the completion plug. While he was working to retrieve the completion plug, Barrett was covered by a rain poncho (to prevent glare on the looking glass), and he took only two to three short breaks. Over the course of the two hours, natural gas accumulated under the rain poncho, creating an oxygen-deficient atmosphere. As a result of his exposure to this atmosphere, Barrett suffered a permanent and disabling brain injury.

Barrett and his wife sued AGL in January 2003, alleging that his injuries resulted from the negligent and reckless conduct of AGL's employees. Specifically, the Barretts alleged that Barrett was under the supervision of both of the AGL employees working on the tap installation and that each of these employees "had obtained the highest level of safety training offered by [AGL]." This training included instruction on how to test for oxygen levels, the requirement that respirators or supplied air be used in confined spaces where natural gas might accumulate, and how to use such respirators or supplied air. Barrett, however, had never received any safety training regarding working with "live" gas and "had always been told [that natural gas] would not hurt him." All of the AGL witnesses deposed in the underlying lawsuit testified that the use of respirators and supplied air was required in a confined area. Additionally, the Barretts' expert witness testified that AGL's failure to test for oxygen levels in the excavation ditch and to consider that ditch a "confined area," once there had been prolonged exposure to natural gas, constituted negligence, and showed a reckless indifference toward the safety and welfare of those working in the ditch.

AGL was listed as a named insured under two separate commercial general liability ("CGL") insurance policies covering the period from July 1, 2001 to July 1, 2002. The first policy, issued by Valley Forge/CNA Insurance Company, provided $1 million primary insurance coverage. The second policy, issued by National Union, provided $1 million excess insurance coverage. Because each policy had been obtained through insurance broker Garner and Glover Company, AGL provided Garner and Glover with notice of the Barretts'

lawsuit. The broker gave notice to the primary insurer, Valley Forge/CNA, but allegedly failed to provide such notice to National Union.

Valley Forge/CNA undertook a defense of AGL and admitted that the Barretts' claim was covered under its policy. Prior to trial, the Barretts' attorney offered to settle the case for $2 million, or the combined limits of both insurance policies. National Union rejected the settlement offer and disclaimed coverage under its policy for the Barretts' claim. AGL thereafter assigned to the Barretts all of its rights against National Union and Garner and Glover, and the Barretts obtained a judgment against AGL in the amount of $2 million. Valley Forge/CNA paid its $1 million in coverage toward that judgment, leaving $1 million unsatisfied. The Barretts then initiated the current action against National Union and Garner and Glover. Their complaint asserted tort, breach of contract, and insurance bad faith claims against National Union and asserted a tort claim against Garner and Glover for its alleged failure to provide National Union with timely notice of the Barretts' claim against AGL.

National Union filed an answer and a motion to dismiss the Barretts' complaint, asserting that their claim against AGL was excluded from coverage under its insurance policy by the pollution exclusion clause contained therein. That clause provides that the Policy would not apply to "any liability arising out of the actual or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants anywhere in the world." The Policy defined "Pollutants" as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

In support of its motion to dismiss, National Union argued that Barrett's injury arose out of his exposure to natural gas and that such gas was a pollutant, as that term is defined under the Policy. Following a hearing, the trial court granted the motion to dismiss, finding that under the Supreme Court of Georgia's decision in *Reed v. Auto-Owners Ins. Co.*,[3] natural gas had to be considered a pollutant. The trial court subsequently entered a final order of judgment, dismissing the Barretts' claims against Garner and Glover, reasoning that in the absence of policy coverage, the broker could not be held liable for any failure to provide National Union with timely notice of those claims. The Barretts now appeal from both of the trial court's orders.

1. Whether natural gas is a "pollutant" under the Policy depends upon whether it is an "irritant or contaminant." As noted

YALE LAW LIBRARY

---

[3] *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286 (667 SE2d 90) (2008).

above, the trial court's holding that natural gas met this definition rested solely on the Supreme Court of Georgia's decision in *Reed*, supra, 284 Ga. at 286. In *Reed*, a tenant had sued her landlord for injuries she sustained when the heating system in her rental house released carbon monoxide gas into the home. The landlord tendered the claim to his insurer, which disclaimed coverage based on the policy's pollution exclusion clause. The insurer sought a declaratory judgment that carbon monoxide fell within its policy's definition of pollutant, which was identical to the definition of pollutant found in the policy at issue here. After the trial court denied the insurer's motion for summary judgment on this question, the insurer appealed and this Court reversed, summarily concluding that "[t]here is no dispute that carbon monoxide is a fume and a gaseous irritant or contaminant. Therefore, it falls clearly within the policy exclusion." *Auto-Owners Ins. Co. v. Reed*.[4]

The Supreme Court of Georgia thereafter granted the landlord's petition for certiorari to consider "whether carbon monoxide gas is a 'pollutant' — i.e., matter, in any state, acting as an 'irritant or contaminant,' including 'fumes.' " *Reed*, supra, 284 Ga. at 288. The Supreme Court also found that carbon monoxide was an irritant or contaminant, reasoning:

> We need not consult a plethora of dictionaries and statutes to conclude that [carbon monoxide] is [an irritant or contaminant]. After all, the very basis for [the tenant's] lawsuit is her claim that the release of carbon monoxide gas inside the rental house "poisoned" her, causing her to suffer difficulty breathing, dizziness, insomnia, vomiting, nausea, headaches, and decreased appetite. Accordingly, we agree with the Court of Appeals that the plain language of the pollution exclusion clause excludes [the tenant's] claim . . . from coverage under the [landlord's] CGL policy.

Id.

This limited, fact-specific holding does not support the conclusion that the subject pollution exclusion bars coverage for the Barretts' claims under the facts of this case. As a threshold matter, unlike the plaintiff in *Reed*, the Barretts have not alleged that Barrett was "poisoned" by natural gas or that he was harmed merely by the release of natural gas from the tap. Rather, their complaint asserts that because of the negligence of AGL employees, the natural gas released from the tap was allowed to accumulate, thereby

---

[4] *Auto-Owners Ins. Co. v. Reed*, 286 Ga. App. 603, 605 (649 SE2d 843) (2007).

creating an oxygen-deprived atmosphere, and that it was the lack of oxygen that injured Barrett.

Moreover, the trial court's application of *Reed* is based on the erroneous assumption that *Reed* found the phrase "irritant or contaminant" to be unambiguous. *Reed*, however, neither held that the phrase was unambiguous nor discussed the definition or general characteristics of an irritant or contaminant. Rather, the opinion simply concluded that, based on the plaintiff's allegation that carbon monoxide had poisoned her, that gas was obviously an irritant or contaminant. Based on this holding, National Union and Garner and Glover argue, and the trial court found, that because Barrett was injured during his exposure to natural gas, that substance is by definition an irritant or contaminant. We decline to apply *Reed* to the facts of this case which is distinguishable.

There is nothing in the current record showing that natural gas is generally defined or viewed as an irritant or contaminant. Indeed, the allegations of the complaint indicate that exposure to natural gas is not necessarily dangerous and does not automatically result in injury so long as the supply of oxygen is not impeded.[5] In the absence of any such evidence, we have no basis for concluding that natural gas is a pollutant under the terms of the Policy.

Finally, to the extent that an exclusion in an insurance contract violates public policy, it will not be enforced. See *Hoque v. Empire Fire and Marine Ins. Co.*[6] It would violate the public policy of Georgia to allow National Union to sell a liability policy to cover AGL whose main product is natural gas, which policy contains an exclusion for damages resulting from such natural gas. Georgia public policy disfavors insurance provisions that "permit[ ] the insurer, at the expense of the insured, to avoid the risk for which the insurer has been paid" and for which the insured reasonably expects it is covered. *Davis v. Kaiser Foundation Health Plan of Ga.*[7] See also *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*[8] ("[w]hile insurance is a matter of contract, not sympathy, the policy is to be construed liberally in favor of the object to be accomplished"); *Anderson v. Southern Guaranty Ins. Co. of Ga.*[9] ("insurance contracts are to be construed

---

[5] We note that the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") specifically excludes natural gas from the definitions of a "pollutant or contaminant" (see 42 USCA § 9601 (33)), while its state equivalent, OCGA § 12-14-1, similarly excludes natural gas from its definition of a "hazardous substance." See OCGA § 12-14-1 (4).

[6] *Hoque v. Empire Fire and Marine Ins. Co.*, 281 Ga. App. 810, 811 (637 SE2d 465) (2006).

[7] *Davis v. Kaiser Foundation Health Plan of Ga.*, 271 Ga. 508, 510 (521 SE2d 815) (1999).

[8] *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324 (548 SE2d 67) (2001).

[9] *Anderson v. Southern Guar. Ins. Co. of Ga.*, 235 Ga. App. 306, 309 (508 SE2d 726) (1998).

in accordance with the reasonable expectations of the insured"). The trial court, however, failed to consider whether its interpretation of the phrase "irritant or contaminant," here, to include natural gas violates Georgia's public policy. The insurance contract at issue specifically covers "bodily injury," was issued to CVC (a pipeline contractor, in the business of constructing and installing pipelines for the storage and transportation of natural gas) and named AGL (a company in the business of producing, transporting, and selling natural gas) as an additional insured. Logically, therefore, the contract was entered into with the understanding (implicit or otherwise) that it would cover liability for bodily injury arising from exposure to natural gas, at least where such exposure occurred during the normal course of an insured's business. See *Rentrite, Inc. v. Sentry Select Ins. Co.*[10] ("because insurance policies are contracts of adhesion, drawn by the legal draftsman of the insurer, they are to be construed as reasonably understood by an insured") (punctuation omitted); *Ace American Ins. Co. v. Truitt Bros.*[11] ("[i]n construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person *in the position of the insured* would understand them to mean") (punctuation omitted; emphasis supplied). See also *Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.*[12] (holding that the owner of a gas station "could have reasonably concluded that gasoline was not deemed a pollutant for purposes of the [pollution] exclusion since it was not specifically identified as such [and] it would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability").

2. We further find that a question exists as to whether the pollution exclusion applies to the Barretts' claims, regardless of whether natural gas is a pollutant within the meaning of the Policy. Specifically, we find that the current record raises a question as to whether Barrett's injuries "arose out of" the "discharge, dispersal, seepage, migration, release, or escape of" natural gas.

Under Georgia law, insurance policies are "liberally construed in favor of [coverage], and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts." (Punctuation omitted.) *Hartford Cas. Ins. Co. v. Smith.*[13] Thus, while coverage provisions are construed broadly "in favor of the object to be accomplished" (*Western Pacific Mut. Ins. Co.*

---

[10] *Rentrite, Inc. v. Sentry Select Ins. Co.*, 293 Ga. App. 643, 647 (1) (667 SE2d 888) (2008).

[11] *Ace American Ins. Co. v. Truitt Bros.*, 288 Ga. App. 806, 807-808 (655 SE2d 683) (2007).

[12] *Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.*, 997 SW2d 510, 518 (Mo. App. 1999).

[13] *Hartford Cas. Ins. Co. v. Smith*, 268 Ga. App. 224, 226 (1) (a) (603 SE2d 298) (2004).

*v. Davies*[14]), "exclusions in an insurance policy are . . . interpreted narrowly, in favor of the insured." *Rentrite*, supra, 293 Ga. App. at 647 (1). Accordingly, where the phrase "arising out of" is found in a coverage provision of an insurance policy, Georgia courts have construed that phrase broadly, holding that "where [an insurance] contract provides that a loss must 'arise out of' a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship." (Punctuation omitted.) *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*[15] See also *BBL-McCarthy, LLC v. Baldwin Paving Co.*[16] ("[T]he term 'arising out of' does not . . . require a finding that the injury was directly and proximately caused by the insured's actions. Almost any causal connection or relationship will do.") (citation and punctuation omitted).

By contrast, however, when found in an exclusionary clause of an insurance policy, we have interpreted the phrase "arising out of" more narrowly, applying the "but for" test traditionally used to determine cause-in-fact for tort claims. See *Continental Cas. Co. v. H.S.I. Financial Svcs.*;[17] *Pilz v. Monticello Ins. Co.*;[18] *Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp.*[19] (applying a pollution exclusion clause). Thus, the question in this case is whether the allegations of the complaint, construed in the light most favorable to the Barretts, show that Barrett's injuries "would not have arisen but for" the release of the natural gas from the tap being installed on the gas line in question. *Pilz*, supra, 267 Ga. App. at 372-373. We find that, so construed, the allegations do not show such a definitive "but-for" causal link.

The limited record before us does not show that the mere presence of the natural gas, standing alone, caused the injury to Barrett. The record indicates that one could work in the presence of any gas that was released from the taps without sustaining an injury — as evidenced by the fact that two AGL employees made a total of three attempts to retrieve the completion valve without suffering any harm. The facts alleged in the complaint indicate that the "but-for" cause of Barrett's injuries was the negligence of the AGL employees who, despite their safety training failed to monitor the

---

[14] *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 681 (1) (601 SE2d 363) (2004).

[15] *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 30 (2) (645 SE2d 536) (2007).

[16] *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 498 (1) (646 SE2d 682) (2007).

[17] *Continental Cas. Co. v. H.S.I. Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996).

[18] *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372-373 (599 SE2d 220) (2004).

[19] *Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp.*, 190 Ga. App. 231, 232 (2) (378 SE2d 407) (1989).

oxygen level in the excavation ditch after work on the taps had continued for a longer than usual time period; failed to view the ditch or the area under the rain poncho as an "enclosed" space, requiring the use of either respirators or supplied air; and failed to ensure that Barrett took sufficient breaks while working to retrieve the completion plug. In short, the allegations of the complaint show that Barrett could have worked safely in the presence of the gas; that the release of the gas, without more, did not injure Barrett; and that the injury to Barrett would not have occurred but for the negligence of the AGL employees.

Thus, this case is in marked contrast to the cases relied upon by National Union and Garner and Glover in support of their argument that the pollution exclusion bars coverage for the Barretts' claims. In each of those cases, it was the mere presence of the pollutant, following its release, dispersal, or seepage that was the "but-for" cause of the plaintiff's injury. See *Reed*, supra, 284 Ga. at 288 (the presence of the carbon monoxide, standing alone, poisoned plaintiff); *Truitt Oil & Gas Co. v. Ranger Ins. Co.*[20] (leakage of gasoline from underground tanks contaminated surrounding environment, necessitating cleanup); *American States Ins. Co. v. Zippro Constr. Co.*[21] (mere presence of asbestos fibers contaminated the home); *Perkins Hardwood Lumber Co.*, supra, 190 Ga. App. at 232 (2) (no injury but for the discharge of the smoke). Because the allegations of the complaint indicate that the release of the natural gas, standing alone, did not cause Barrett's injuries, we cannot say that the injuries "arose out of" the release of that gas.

For the reasons set forth above, we find that the trial court erred in holding that the claims asserted in the Barretts' complaint were excluded from coverage under the Policy. We therefore reverse the trial court's orders dismissing the Barretts' claims against National Union and Garner and Glover.

*Judgment reversed. Barnes, P. J., and Bernes, J., concur.*

DECIDED MAY 11, 2010 —
RECONSIDERATION DENIED JUNE 7, 2010.

*Akin & Tate, William M. Akin, S. Lester Tate III*, for appellants.
*Weinberg, Wheeler, Hudgins, Gunn & Dial, John C. Bonnie, Stephen J. Rapp, Owen, Gleaton, Egan, Jones & Sweeney, Charles J. Cole, Derrick L. Bingham*, for appellees.

---

[20] *Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 231 Ga. App. 89 (498 SE2d 572) (1998).
[21] *American States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499 (455 SE2d 133) (1995).

*Robin F. Clark, Kilpatrick Stockton, Julie A. Lierly, McNatt, Greene & Peterson, Hugh B. McNatt, Troutman Sanders, Norman L. Underwood, Thomas E. Reilly, Brian P. Watt,* amici curiae.