David EARWOOD, as Assignee of RB Motors, LLC, d/b/a R2B2 Motors, Plaintiff,

v.

EVANSTON INSURANCE CO., as successor by Merger with Essex Insurance Co., Defendant.

Evanston Insurance Co., as successor by merger with Essex Insurance Co., Plaintiff,

v.

RB Motors, LLC, d/b/a/ R2B2 Motors, R2B2 Motorsports, LLC; Bobby Kevin Mutters, and David Earwood, individually and as Personal Representative of the Estate of Christine Earwood, Defendants.

CIVIL ACTION FILE NO. 1:16–CV–2625–SCJ, CIVIL ACTION FILE NO. 1:15–CV–4433–SCJ

United States District Court, N.D. Georgia, Atlanta Division.

Signed 02/01/2017

Lewis Andrew Watson, Butler Weihmuller Katz Craig, LLP, Charlotte, NC, R. Steven Rawls, Ryan K. Hilton, Butler Pappas Weihmuller Katz Craig, LLP, Joseph C. Gebara, Fields Howell LLP, William Maxwell Compton, Morgan & Morgan, PLLC, Atlanta, GA, for Plaintiff.

Kenneth James Bentley, Donald L. Swift, III, Andersen, Tate & Carr, P.C., Duluth, GA, Jeffrey B. Hicks, Jeffrey B. Hicks, P.C., Lawrenceville, GA, Daniel Colin Beer, Alan J. Hamilton, Shiver Hamilton, LLC, Atlanta, GA, for Defendants.

### ORDER

HONORABLE STEVE C. JONES,
UNITED STATES DISTRICT JUDGE

In this insurance coverage dispute, Evanston Insurance Co. seeks a declaration that it owes Defendant David Earwood no duty to defend or indemnify for claims arising from the death of his wife, Christine Earwood. Both sides have cross-moved for summary judgment. Because the events surrounding Christine's death did not trigger the coverage exclusion upon which Evanston relies, the Court **DENIES** Evanston's motion (doc. 54)[1] and GRANTS Earwood's. Doc. 60.

## I. BACKGROUND

"In the early evening of September 1, 2014, Christine Earwood was a passenger onboard a 54-foot yacht owned and controlled by Defendant R2B2 LLC and operated by [David] Mutters." Doc. 1–2 at 3.[2] As the boat approached the marina entrance, Christine "needed to use the restroom." Id. Because the boat's facilities were "not operational," she "went toward the back of the boat and the swim platform to jump in the water and relieve herself." Id. "Mutters knew [Christine] was doing this," and "indicated [that] he would shut the propellers down so that [Christine] could safely enter the water." Id.

Christine then "dove into the water and away from the boat." Doc. 1–2 at 3. Instead of shutting down the boat, Mutters put it "in gear, and went in reverse, with [Christine] in the water behind the boat." Id. at 4.

> [Christine's] bathing suit was torn off and wrapped in the propeller shaft. [She] sustained severe injuries from contact with the propeller of the boat. [Christine] drowned as a result of her injuries from the boat propeller.... All of the significant injuries noted to [Christine's] body at autopsy, including lacerations to the head and body, were caused by contact with the boat rudder and/or propeller.

Id. (paragraph numbers omitted).

Christine's surviving spouse, David Earwood, filed suit in Gwinnett County State

---

1. All record citations are to the electronic docket in Evanston v. Earwood, No. 1:15–cv–4433, unless otherwise noted. All page numbers are those imprinted by the Court's docketing software. Despite the citations to the docket in -4433, this Order shall be docketed in both that case and in Case No. 1:16–cv–2625.

2. For reasons fully illuminated below, the facts surrounding Christine's death are drawn from the wrongful-death complaint David Earwood filed in state court. Doc. 1–3.

Court on April 10, 2015 against Mutters, R2B2, and R2B2 Motosports, LLC (the "Underlying Action"). Doc. 1–2 at 1. That case ultimately resulted in judgment against RB Motors. Doc. 59 at 4 n.1.

Enter Evanston. At the time of Christine's accident, RB Motors had a marine insurance policy (the "Policy") with Essex Insurance Co. (Evanston's predecessor) that insured RB Motors and Mutters. Doc. 54–1 at 2. Among other provisions, it contains an exclusion that states:

> The General Liability and or Protection and Indemnity coverage afforded by this policy excludes and does not cover loss, damage, injury or expense caused by or resulting from any in water activities such as, but not limited to, swimming, diving, waterskiing.

Id. at 4.

After judgment in the Underlying Action, the defendants in that case assigned their rights under the Policy to Earwood. Before they did so, however, Evanston filed the present declaratory judgment action in this Court. Doc. 1 (filed December 22, 2015). About six months later, after the assignment, Earwood filed a case of his own against Evanston. See Earwood v. Essex Ins. Co., No. 1:16–cv–2625. The two matters have since been consolidated. Doc. 74.

Evanston's summary judgment motion contends that the Policy excludes coverage, and thus that Evanston has no duty to defend or indemnify, for injuries resulting from accidents like Christine's. Doc. 54–2. Because (1) Christine engaged in an "in water activity" when she dove into the lake to relieve herself, and (2) that activity resulted in her injuries, the "in water activities" exclusion, says Evanston, applies.

Earwood contests both conclusions. Christine's actions, he insists, never amounted to "in water activity." Doc. 59 at 2. Even if they did, Mutter's negligence, not Christine's activity, "caused" her injuries, at least so far as causation is defined in the context of coverage exclusions. Id. Either conclusion, says Earwood, precludes the exclusion's application.

## II. GOVERNING STANDARD

"Summary judgment is appropriate when the moving party establishes that, based upon the evidence presented, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Dean–Mitchell v. Reese, 837 F.3d 1107, 1111–12 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). Here, the Underlying Action's complaint contains the relevant "facts" necessary to decide the pending motions. The parties do not dispute that. Compare doc. 54–1, with doc. 59–1. Only pure questions of law remain for the Court to decide, which it does so with an eye to state law principles for interpreting insurance contracts (outlined below).

## III. ANALYSIS

The overarching legal issue central to the present motions is whether Evanston had a duty to defend RB Motors in the Underlying Action. To decide that, the Court must ascertain whether the Policy's "in water activities" exclusion applies. If it does, Evanston had no duty and summary judgment in its favor is appropriate. If it did not, the duty existed and Earwood's motion prevails.

██ An insurer's duty to defend depends on whether a complaint's allegations allege a claim that may fall within a policy's coverage. See Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs, 337 Ga.App. 340, 343, 788 S.E.2d 74 (2016). If they do not, no duty exists. Id. Here, because the "in water activities" exclusion

arguably bars coverage, the question becomes whether the Underlying Action (that's the suit that may have triggered Evanston's duty to defend) alleged that Christine (1) engaged in an in water activity, and (2) caused her injury. Doc. 54-1 at 4. If it does, Evanston had no duty to defend (and thus also no duty to indemnify).

### A. In Water Activity

■ Looking to the Policy's language, Evanston highlights that it broadly defines "in water activities" by reference to a non-exclusive list of qualifying conduct: "swimming, diving, and waterskiing." Doc. 54-2 at 8–9. What's more, says Evanston, the Policy withdraws coverage for "any" in water activity, thus broadening yet further its exclusionary reach. Because Christine "dove into the water and away from the boat," and was "in the water behind the boat" when the accident occurred, she was, to Evanston, engaged in an excluded in water activity.

Earwood insists that matters are not so clear cut. The exclusion, he says, "is ambiguous and must be construed in favor of coverage." Doc. 59 at 12. In that light, Christine engaged in no *activity* while in the water. Id. Evanston's contrary contentions thus amount to an argument that the Policy excludes coverage if an injury occurs while someone is merely in water. Id. at 13. But that's not what the Policy says, notes Earwood, and in any case amounts to an expansive construction that ignores the provision's ambiguity. Id.

■ "Under Georgia law, an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." State Farm Fire & Cas. Co. v. Moss, 338 Ga.App. 684, 687, 790 S.E.2d 831 (2016). "Georgia law [also] requires the narrow construction of exclusions from coverage in insurance policies." Georgia Farm Bureau Mut. Ins. Co. v. Smith, 298 Ga. 716, 718, 784 S.E.2d 422 (2016). Indeed, "[a]ny exclusion sought to be invoked by the insurer is to be liberally construed against the insurer unless it is clear and unequivocal." St. Paul Mercury Ins. Co. v. FDIC, 774 F.3d 702, 709 (11th Cir. 2014).

Even construed narrowly and against Evanston, the in water activities exclusion encompasses Christine's conduct as alleged in the Underlying Complaint. That provision, as noted above, excludes coverage for injuries stemming from *any* in water activity, a phrase that is defined in part by reference to a non-exclusive list of examples. "Any" unambiguously casts a wide net, while "activity," particularly when paired with three examples that all constitute physical conduct, plainly speaks to something more than simply sitting in water doing nothing.

The Underlying Action's complaint alleges that Christine dove off the boat. Doc. 1–2 at 3. Had that resulted in injury (it did not), the exclusion would apply since in water activity includes diving. She then necessarily swam for some period of time.[3] Id. That, like diving, undeniably qualifies as an in water activity. When she encountered the boat's propeller), Christine must have been either treading water while relieving herself, or still swimming away from the boat.[4]

---

**3.** Necessarily, because diving "away from the boat" means that she jumped off the boat, at which point gravity kicked in to force her into the water. Once she entered the water, Christine wasn't diving. Instead, she was swimming, however briefly.

**4.** The Underlying Action's complaint states only that (1) Christine "dove into the water and away from the boat," and (2) Mutters put the boat in reverse with her "in the water behind the boat," before the injury occurred. Doc. 1–2 at 3–4. Given Christine's stated purpose of relieving herself, being "in the water" meant either that she continued to move away

Either qualifies as in water activity. Swimming and diving, again, are listed in the exclusion itself. And treading water, if it doesn't itself amount to swimming (it may), also constitutes in water activity. An example illustrates why.

Suppose Christine wanted to see if she could tread water as long as Navy Seals. She jumped off the back of the boat and began to tread water. Then the accident happened. Under those circumstances, she was engaged in an in water activity because she was physically moving with a purpose and doing so while in water.

The only difference between that example and the Underlying Action's allegations is that the water treading occurred to allow Christine to relieve herself versus to test her aquatic fortitude. That's not a difference relevant to the exclusion's application because the precise purpose of the activity (whether speed, competition, etc.) has no bearing on whether in fact it qualified as an activity nor whether it occurred in water.

Earwood correctly notes that the word activity, and the provision's three examples, signal that mere presence in water (standing in ankle deep water doing nothing, for example) would not trigger exclusion. Swimming, diving, and waterskiing all involve active (as opposed to passive) conduct. The trouble is that Christine's conduct, as noted above, does not amount to mere presence. She was engaged in activity while in the water, not just passively present.

Nor does a broadly applicable definition, as Earwood insists, necessarily equal ambiguity. Many types of conduct could qualify as "any" in water activity. Treading water, snorkeling, scuba diving, swimming, water polo, waterskiing, knee boarding, surfing, and fly fishing (in waders, while in

the water), among other activities, all qualify. See, e.g., Sphere Drake Ins. PLC v. Fun Charters, Inc., No. CIV-96-00667 HG, 1997 WL 1065503, at *3 (D. Haw. June 26, 1997) (company requested insurance carrier "provide a standard vessel insurance policy which would specifically exclude any in-water activity (i.e. diving, snorkeling or the like) from coverage"). But as large as that list potentially is, it is limited, and the exclusion's language, by including "activity" and a list of qualifying examples, does not extend it to mere presence in water.

Again, "in water activity" requires that a person be (1) in water, and (2) engaged in activity. Whatever precisely Christine was doing at the time the boat/propeller hit her, whether swimming, diving, or treading water while relieving herself, she was in water engaged in activity. That does not decide Evanston's motion, however. It remains to be determined whether Christine's injury was caused by or resulted from her in water activity.

### B. Causation

■ Even if a person is engaged in water activity, the exclusion only precludes coverage if an injury results from or is caused by that activity. Doc. 54–1 at 4. Put differently, the in water activity itself must have caused the injury for which coverage is sought. But what constitutes cause sufficient to impose liability?

Evanston contends that the exclusion's "caused by or resulting from" language equates to "arising out of," which itself means that the in water activity must have been the "but for" cause of the injury. Doc. 54–2 at 11. "Applying 'but for' causation to" Earwood's claims in the Underlying Action, says Evanston, Christine would not have drowned "but for" her in water activi-

---

from the boat after diving, in which case she was swimming, or that she was in the water

relieving herself, in which case she was treading water.

ty. Id. at 14. She "would never have come into contact with the [boat's] propeller ... had she not been in the water after jumping into the water to seek relief." Id. at 15. "Therefore," concludes Evanston, the " 'In Water Activities' Exclusion unambiguously applies to [Earwood's] claims." Doc. 54–2 at 15.

■ Earwood agrees that the exclusion requires that an in water activity be the "but for" cause of injury. The scope of that inquiry is where the parties part company. To Earwood, "but for" causation in the context of an exclusion differs from a causation analysis when a coverage provision is involved. Doc. 59 at 2. In the former, "but for" means cause-in-fact, a narrower standard than the broad one Evanston presses. Id. at 7. And applying that standard to this case leads ineluctably to Mutters' negligence as the "but for" cause of Christine's death. Id. at 10.

> [I]n Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction

Hays v. Georgia Farm Bureau Mut. Ins. Co., 314 Ga.App. 110, 111–12, 722 S.E.2d 923 (2012).

Insurance policies, moreover, "are liberally construed in favor of [coverage], and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts. Thus, while coverage provisions are construed broadly in favor of the object to be accomplished, exclusions in an insurance policy are ... interpreted narrowly, in favor of the insured." Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh, 304 Ga.App. 314, 320–21, 696 S.E.2d 326 (2010) (quotes and cites omitted, alterations and omissions in original).

■ Applying that logic to "arising out of" in the coverage provision context, "courts have construed that phrase broadly, holding that where [an insurance] contract provides that a loss must 'arise out of' a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship." Barrett, 304 Ga.App. at 321, 696 S.E.2d 326. "By contrast, however, when found in an exclusionary clause of an insurance policy," "but for" cause becomes the "test traditionally used to determine cause-in-fact for tort claims." Id. (citing Continental Cas. Co. v. H.S.I. Financial Svcs., 266 Ga. 260, 262, 466 S.E.2d 4 (1996)).

Causation is, at times, a rather nebulous inquiry at times whose contours can only be defined by reference to other cases. In Barrett, for example, a construction worker repairing a natural gas line in the presence of two more highly trained gas company employees, suffered brain injuries after standing in a ditch for approximately two hours under a plastic covering with a pipe releasing gas. 304 Ga.App. at 316, 696 S.E.2d 326. The covering reduced air flow, which allowed the gas to displace oxygen in the confined space, and that in turn caused the worker's injury. Id. The two other men present, despite extensive training, never warned the worker about the covering or safety measures he could have taken.

The gas company (who the worker sued) had an insurance policy that excluded coverage for injuries "arising out of the ... discharge ... of pollutants anywhere in the world." Id. at 317, 696 S.E.2d 326. After finding that natural gas was a pollutant, the court observed that "the mere

presence of the natural gas" did not cause the worker's injury. Id. at 321, 696 S.E.2d 326. The complaint's allegations showed instead that "the release of the gas, without more, did not injure" the worker. Id. "[B]ut for the negligence of the [gas company] employees," said the court, the construction worker "would not have" suffered an injury. Id. at 322, 696 S.E.2d 326.

By contrast, in Jefferson Insurance Co. v. Dunn, the court held that an exclusion for injuries caused by assault and/or battery barred coverage for negligent hiring claims, where the underlying complaint alleged that the plaintiff was injured as a result of having been beaten by an employee of the insured. 269 Ga. 213, 216, 496 S.E.2d 696 (1998). H.S.I. Financial Services likewise found no duty to defend where one law firm member committed a criminal act and the plaintiff sued the other partners for negligent supervision. 266 Ga. at 260–61, 466 S.E.2d 4. The firm's malpractice policy excluded coverage for claims "arising out of" criminal acts by firm members. Id. at 261, 466 S.E.2d 4. The court found for the insurance company because "the exclusionary clause [was] not at all concerned with whether ancillary acts of less culpable partners may have contributed to the [injury]." Id. at 262, 466 S.E.2d 4. "Rather, by its express terms, the exclusionary clause is focused solely upon the genesis" of the claims. Id. Because that genesis was a criminal act— because the "claims *arose out of*" the criminal conduct—the policy excluded coverage. Id. (emphasis in original).

The Underlying Action's complaint here alleges that Christine dove off of and away from the back of the boat Mutters was driving *after* telling him of her need to relieve, and *after* he told her that he would "shut the boat propellers down so that [she] could safely enter the water." Doc. 1–2 at 3. Instead, Mutters "put the boat in gear, and went in reverse." Id. at 4. The

boat propeller and Christine then came into contact, tearing off her bathing suit and causing "severe injuries" that ultimately resulted in her drowning. Id.

It's true that in one sense Christine's injuries would not have occurred "but for" her being in the water. It's true in that same sense, however, that she would be alive today "but for" deciding to go the lake that day. That kind of "but for" causation is not the kind relevant to the cause inquiry conducted in the exclusionary clause context.

Like the natural gas in Barrett, Christine's "mere presence" in the water, her mere engagement in an in water activity, "without more, did not injure" her. Barrett, 304 Ga.App. at 321–22, 696 S.E.2d 326. It took Mutters' negligence to make that happen. Mutters put the boat in reverse despite knowing that Christine was behind the vessel, and despite telling her he would shut down the propellers. Doc. 1–2 at 3. *That* stands as a link in the causal chain between Christine's decision to jump in the water and the accident and thus serves as the "cause-in-fact" of her injuries.

Cases like H.S.I. Financial Services and Dunn are not to the contrary. In both of those matters, the negligent conduct underlying the plaintiffs' claims stood at a significant remove from the assaults that directly caused injury. Mutters' negligence, by contrast, occurred immediately prior to the propeller and Christine's unfortunate meeting. Hardly any passage of time occurred, and no intervening decision or conduct by Christine, Mutters, or anyone else stood between his decision to put the boat in reverse and the boat hitting Christine.

A mental diagram helps to illustrate the difference between Barrett and this case on the one hand, and H.S.I., and Dunn on the other. Imagine a series of concentric

circles with Christine's accident at the center. Each circle represents something that "caused" the event to occur. The outermost circles are events like Christine's decision to leave the house that morning, her decision to get in the car and go to the lake, and the decision to ever get on the boat, all of which, had they not occurred, would have prevented the accident (i.e., "but for" their occurrence, Christine would be alive). As the circles get smaller (closer to the accident), one first encounters Christine's decision to engage in an in water activity. "But for" the activity, Christine would not have been in a position to hit the propeller. Closer to the center of the circles, however, lies Mutters' alleged negligence in putting the boat in reverse despite knowing that Christine planned to dive in the water.

But for Mutters, Christine's in water activity never would have led to an injury. She would have dove into the lake, relieved herself, and then presumably climbed back onto the boat. Only because Mutters put the boat in reverse did she meet the propeller.

Compare those circles to H.S.I.'s. At the center lay the injurious assault. At the outer edge, the partners' decision to start a firm. In between lay the two causes pushed by the parties as the "but for" cause—negligent hiring of the assaulting employee, and the employee's decision to assault the plaintiff. Which circle occupies the same position as Mutters' negligence? The employee's assault does. That, then, is, as the court found, the but for cause of the H.S.I.'s plaintiff's injury, not the tangentially related (but still causally connected) alleged negligent hiring.

Christine Earwood engaged in an "in water activity" when she dove off of the boat. But that activity did not cause her injuries. The Policy's exclusion thus did not bar coverage. Evanston, therefore, had a duty to defend RB Motors and Mutters in the Underlying Action.

## IV. CONCLUSION

Accordingly, the Court **DENIES** Evanston's motion for summary judgment (doc. 54) and **GRANTS** Earwood's. Doc. 60. The Clerk is **DIRECTED** to docket this Order in Case No. 1:15–cv–4433 and Case No. 1:16–cv–2625.

**SO ORDERED** this 1st day of February 2017.